1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

THEODORE J. THOMPSON,                              )
                                                   )
                                  Plaintiff,       )        Case No. 2:07-cv-01378-RLH-PAL
                                                   )
vs.                                                )        **ORDER AND REPORT OF FINDINGS**
                                                   )            **AND RECOMMENDATION**
UNIVERSITY MEDICAL CENTER, et al.,                 )
                                                   )        (Mtn Clarification/Extend Time - Dkt. #33)
                                  Defendants.      )        (Mtn to Serve Amended Compl. - Dkt. #31)
_____                )

        Before the Court is Plaintiff Theodore J. Thompson's ("Plaintiff") Second Amended Complaint

(Dkt. #26) filed on November 7, 2008 and Defendant University Medical Center's ("UMC")

Emergency Motion for Clarification, And/Or Extension of Time to Respond to Complaint (Dkt. #33)

filed on January 7, 2008.  The court must screen Plaintiff's Second Amended Complaint and will then

address UMC's Motion.

                                       **DISCUSSION**

**I.      The Second Amended Complaint (Dkt. #26).**

        **A.      Legal Standard for Screening the Second Amended Complaint.**

        Upon granting a request to proceed *in forma pauperis*, a court must screen a complaint pursuant

to § 1915(e). Specifically, federal courts are given the authority dismiss a case if the action is legally

"frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary

relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2). When a court

dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with

directions as to curing its deficiencies, unless it is clear from the face of the complaint that the

deficiencies could not be cured by amendment. See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir.

1995).

1  Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for

2  failure to state a claim upon which relief can be granted.  Review under Rule 12(b)(6) is essentially a

3  ruling on a question of law. See North Star Intern. v. Arizona Corp. Comm'n, 720 F.2d 578, 580 (9th

4  Cir. 1983).  In considering whether a plaintiff has stated a claim upon which relief can be granted, all

5  material allegations in the complaint are accepted as true and are to be construed in the light most

6  favorable to the plaintiff.  See Russel v. Landrieu, 621 f.2d 1037, 1039 (9th Cir. 1980). Allegations of a

7  *pro se* complaint are held to less stringent standards than formal pleading drafted by lawyers.  See

8  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).

9  **B.      Factual Allegations Contained in the Second Amended Complaint.**

10  Plaintiff alleges that on September 26, 2006, he admitted himself into the Emergency Room at

11  UMC because he was depressed, hearing voices, and suicidal.  Second Amended Complaint at ¶ 2.

12  UMC admitted Plaintiff on a seventy-two-hour hold pursuant to Nevada law.  Id. at ¶ 10; N.R.S

13  § 433A.145-190.  UMC staff informed Plaintiff he would be transferred to the Southern Nevada Adult

14  Mental Health Services ("SNAMHS") for inpatient care as soon as a bed became available.  Second

15  Amended Complaint at ¶ 4.  On September 28, 2006, Plaintiff complained about severe pain caused by

16  a hernia to a UMC psychiatrist who said he would refer Plaintiff to a medical doctor for treatment and

17  surgery.  Id. at ¶ 4-5.  A medical doctor examined Plaintiff's hernia on September 29, 2006, ordered a

18  CAT scan, started an I.V., and told Plaintiff surgery was necessary to remove the hernia.  Id. at ¶ 5.

19  Doctor Vicki Mazzorana also examined Plaintiff and served him with a petition for court-ordered

20  admission because he was mentally ill and a danger to himself or others as defined in N.R.S. 433A.145.

21  Id. at ¶ 3.  The petition set a hearing in front of the Mental Health Court for October 6, 2006.  Id.

22  On September 30, 2006, Plaintiff fell out of his hospital bed and injured his hand and right

23  index finger. Id. at ¶6.  Plaintiff began to complain about his injured hand and other problems to the

24  charge nurse, "T. Esther A." (hereinafter, "Nurse Esther"), who allegedly became hostile with Plaintiff.

25  Id. Dr. Mariam Marvasti ("Dr. Marvasti") visited Plaintiff the same day and informed him that the

26  nurse had said that he should be discharged.  Id. at ¶ 7.  Plaintiff responded that he was suicidal and

27  should not be discharged.  Id.  According to Plaintiff, Dr. Marvasti was irritated and angry, and she left,

28  stating, "Well that's not what the nurse tells me."  Id.

2

1    On October 1, 2006, Plaintiff requested to see a doctor for his injured hand.  Id. at ¶ 8.  When he

2  showed his hand to Nurse Esther, she allegedly grabbed his finger "as if she intended to cause pain and

3  hurt."  Id.  At 11:30 a.m., Nurse Esther, accompanied by two security guards, told Plaintiff he was

4  being discharged.  Id. at ¶ 9.  Plaintiff alleges he tried to show her the petition and tell her he was

5  awaiting a bed at SNAMHS, but she said she was discharging him regardless of what anyone else said,

6  and she made Plaintiff get dressed and leave.  Id.  Plaintiff states that when he tried to discuss his

7  discharge, the security officers and Nurse Esther and the security guards forced him to leave under

8  verbal threats of force and with a security escort.  Id. at ¶ 10.  Later that evening, Plaintiff noticed that

9  he was given the wrong amount of medication–less than a one-week supply instead of a two-week

10  supply.  Id. at ¶ 11.  Plaintiff began feeling suicidal and took all of his medication in an attempt to kill

11  himself.  Id. at ¶ 12.  He called his friend, who took him to the Emergency Room at Sunrise Hospital,

12  where he was admitted.  Id. at ¶ 13.  Plaintiff was eventually transferred to a mental health care facility,

13  treated, and discharged on October 12, 2006.  Id.

14  **C.    Legal Analysis and Screening.**

15    The Second Amended Complaint attempts to state a claim under 42 U.S.C. § 1983, alleging that

16  Defendants (defined below) violated his rights under the First and Fourteenth Amendments, as well as

17  Nevada state law.   Generally, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a

18  right secured by the Constitution and laws of the United States, and must show that the alleged

19  deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42

20  (1988) (citation omitted).

21    **1.    Parties Named in the Second Amended Complaint.**

22    States and state officers sued in their official capacities are not "persons" for purposes of a

23  § 1983 action and may not be sued under the statute.  Will v. Mich. Dept. of State Police, 491 U.S. 58,

24  71 (1989).  On the other hand, § 1983 allows suits against state officers in their individual capacities for

25  acts they took in their official capacities.  Hafer v. Melo, 502 U.S. 21, 26 (1991).  Likewise, local

26  governments, such as municipalities, can be sued under § 1983, but only for "a policy statement,

27  ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or for a

28  "governmental 'custom' even though such a custom has not received formal approval through the

3

1   body's official decisionmaking channels." <u>Monell v. Dept. of Soc. Serv. of City of N.Y.</u>, 436 U.S. 658,

2   690-91 (1978).

3        Here, Plaintiff names the following individuals in his complaint: Dr. Marvasti, in her individual

4   and official capacity; Nurse Esther, in her individual and official capacity; UMC; and "two unknown

5   named UMC Security Guards" in their individual capacity; and Does 1-10 (hereinafter, the "Security

6   Guards," and together with Dr. Marvasti, Nurse Esther, and UMC, the "Defendants").  Plaintiff alleges

7   that Nurse Esther, the Security Guards, UMC, and Dr. Marvasti acted wrongfully under color of state

8   law with deliberate indifference to his medical needs by wrongfully discharging him and/or ordering

9   him to leave UMC under threat of force.  Additionally, Plaintiff alleges that he was wrongfully

10  discharged from the UMC and that UMC violated his rights by "having and adopting a policy and/or

11  practice in place that allowed patients to be discharged without adequate medical care."  Second

12  Amended Complaint at ¶ 14.  Based upon these allegations, and as described above, Plaintiff has shown

13  that UMC, a county hospital, is subject to suit in this matter.  <u>See</u>, <u>e.g.</u>, <u>Monell</u>, 436 U.S. at 690 (stating

14  that "Congress included customs and usages [in § 1983] because of the persistent and widespread

15  discriminatory practices of state officials....Although not authorized by written law, such practices of

16  state officials could well be so permanent and well settled as to constitute a custom or usage with the

17  force of law") (internal citation omitted).  However, because Plaintiff does not allege that the Doe

18  Defendants committed any wrongdoing, the Court will dismiss the Amended Complaint against them.

19  Plaintiff has not stated any basis for suing any of the individual defendants in their official capacity, and

20  therefore, Plaintiff's claims against Dr. Marvasti, Nurse Esther, and the Security Guards in their official

21  capacities will be dismissed.

22       Also, Plaintiff "must sufficiently plead that [defendants] engaged in state action" in order to

23  establish liability under § 1983.  <u>Brunette v. Humane Society of Ventura County</u>, 294 F.3d 1205, 1209

24  (9th Cir. 2002) (citation omitted).  "The purpose of § 1983 is to deter <u>state actors</u> from using the

25  badge of their authority to deprive individuals of their federally guaranteed rights."  <u>McDade v. West</u>,

26  223 F.3d 1135, 1139 (9th Cir. 2000) (emphasis added) (<u>citing</u> <u>Wyatt v. Cole</u>, 504 U.S. 158, 161

27  (1992)).  A defendant only acts under the color of state law if he exercises power possessed by virtue of

28  state law and made possible only because he "is clothed with the authority of state law."  <u>Id.</u> at 1139-40.

4

1   "Whether a private party engaged in state action is a highly factual question." Brunette, 294 F.3d at

2   1209 (citations omitted).  Here, Plaintiff states Defendants treated him while he was involuntarily

3   committed to UMC pursuant to Nevada law.  Plaintiff has sufficiently plead liability under § 1983 as to

4   the Defendants under the state actor requirement by alleging his commitment and treatment were

5   authorized by state law.

6          **2.      Constitutional Allegations.**

7          In his First Cause of Action, Plaintiff claims that his Fourteenth Amendment right to procedural

8   and substantive due process were violated.  "Procedural due process provides 'a guarantee of fair

9   procedure in connection with any deprivation of life, liberty, or property' by the government.'" Denney

10  v. Drug Enforcement Admin., 508 F. Supp. 2d 815, 833 (E.D.Cal. 2007) (citing Collins v. City of

11  Harker Heights, 503 U.S. 115 (1992)).  The Ninth Circuit has held that:

12          Substantive due process "protects individual liberty against certain
            government actions regardless of the fairness of the procedures used to
13          implement them."  Specifically, the substantive component of the Due
            Process Clause "forbids the government from depriving a person of life,
14          liberty, or property in such a way that 'shocks the conscience' or 'interferes
            with rights implicit in the concept of ordered liberty.'

15

16  Denney, 508 F. Supp. 2d at 833 (citing Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936, 948 (9th

17  Cir. 2004)) (citations omitted).  "Liberty" under the Fourteenth Amendment includes many of the rights

18  protected in the Bill of Rights, such as the First Amendment right to Free Speech, Carpenters and

19  Joiners Union of America, Local No. 213 v. Ritter's Café, 315 U.S. 722, and the Eighth Amendment

20  guarantee against cruel and unusual punishment, La. ex rel. Francis v. Resweber, 329 U.S. 459, 463

21  (1947).  Civilly committed individuals also have liberty interests cognizable under the Fourteenth

22  Amendment, such as the right to safety and medical care.  DeShaney v. Winnebago County Dept. of

23  Soc. Serv., 489 U.S. 189, 199-200 (1989); Youngberg v. Romeo, 457 U.S. 307, 317-18 (1982).

24          Although the government must use adequate procedures before committing a mental health

25  patient, Plaintiff does not appear to be arguing that his commitment to UMC violated his due process

26  rights.  Rather, Plaintiff alleges that Nurse Esther, Dr. Marvasti, the Security Guards, and UMC:

27  (a) disregarded his medical needs by discharging him from UMC; and (b) violated his constitutional

28  liberties without adequate procedures in violation of his substantive and procedural due process rights.

1  Plaintiff alleges he informed Nurse Esther and Dr. Marvasati that he was suicidal, had a petition for

2  court-ordered admission to a mental health facility, and his hand was injured, but they nonetheless

3  discharged him regardless of what anyone else said.  Further, Plaintiff asserts that UMC violated his

4  right to procedural and substantive due process in violation of the Fourteenth Amendment by having a

5  policy or practice in place that allowed patients to be discharge in contravention of their medical needs.

6  Assuming the truth of these allegations, the Court finds the complaint states a § 1983 claim against

7  Nurse Esther, the Security Guards, and Dr. Marvasti in their official capacities, as well as UMC, for

8  violation of Plaintiff's rights to procedural and substantive due process under the Fourteenth

9  Amendment.

10      In his second cause of action, Plaintiff claims that UMC, the Security Guards, Nurse Esther, and

11  Dr. Marvasti violated his First Amendment right to free speech.  It is well-settled that the government

12  may not deny an individual benefits due to his exercise of free speech.  The Ninth Circuit has held:

13          [A] State may not use its control over discretionary government benefits
            in a manner that places excessive burdens on certain constitutional rights.
14          Under the doctrine of "unconstitutional conditions," even though a person
            has no "right" to a valuable governmental benefit and even though the
15          government may deny him the benefit for any number of reasons, there
            are some reasons upon which the government may not rely.  It may not
16          deny a benefit to a person on a basis that infringes his constitutionally
            protected interests – especially, his interest in freedom of speech.

17

18  Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1997) (emphasis added).  Plaintiff argues UMC, the

19  Security Guards, Nurse Esther, and Dr. Marvasti violated his First Amendment rights by wrongfully

20  discharging him from UMC in retaliation for his complaints of inadequate care.  Plaintiff alleges Nurse

21  Esther and Dr. Marvasti impermissibly terminated his medical treatment after he complained about his

22  injured hand and the treatment he was receiving.  Because Plaintiff alleges government actors denied

23  him a benefit as a result of exercising his First Amendment right to free speech, this cause of action

24  against the Security Guards, Nurse Esther, Dr. Marvasti in their individual capacities states a First

25  Amendment claim cognizable under § 1983.

26      Plaintiff argues in his third cause of action that UMC, the Security Guards, Nurse Esther, and

27  Dr. Marvasti violated Nevada law by committing professional negligence and inflicting extreme

28  emotional distress.  Plaintiff claims this Court has jurisdiction over based on pendent jurisdiction.

6

1    See Second Amended Complaint at ¶ 19.  Under the doctrine of supplemental jurisdiction, previously

2    pendent jurisdiction, a federal court may hear state claims that are part of the "same case or

3    controversy" as a claim arising under federal law.  28 U.S.C. § 1367(a).  This court has supplemental

4    jurisdiction over Plaintiff's state law claims because they arise from the same "nucleus of operative

5    fact" – namely, Plaintiff's discharge from UMC – as his valid federal claims.  United Mine Workers v.

6    Gibbs, 383 U.S. 715, 725 (1966).

7           Nevada defines professional negligence as "a negligent act or omission to act by a provider of

8    health care in the rendering of professional services, which act or omission is the proximate cause of a

9    personal injury or wrongful death."  N.R.S. 41A.015.  "Provider of health care" includes a licensed

10   physician, licensed nurse, and also a licensed hospital and its employees.  N.R.S. 41A.017.  Nevada also

11   recognizes the tort of intentional infliction of emotional distress ("IIED"), which requires "(1) extreme

12   and outrageous conduct with either the intention of, or reckless disregard for, causing emotional

13   distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or

14   proximate causation."  Star v. Rabello, 97 Nev. 124, 125 (1981).  Finally, Nevada allows recovery for

15   negligent infliction of emotional distress ("NIED") based on "'the general principles of tort law,

16   including the concepts of negligence, proximate cause, and foreseeability."  State v. Eaton, 101 Nev.

17   705, 713 (1985), overruled in part on other grounds, State ex rel. Dept. of Transp. v. Hill, 114 Nev. 810,

18   818 (1998) (quoting Dillon v. Legg, 441 P.2d 912, 924 (1968)); Chowdhry v. NLVH, Inc., 109 Nev.

19   478, 482-83 (1993) (extending NIED recovery to cases where the negligent act was committed directly

20   against the plaintiff, rather than where plaintiff is a bystander to the negligent act).  Here, Plaintiff has

21   stated claims for professional negligence, IIED, and NIED against UMC, the Security Guards, Nurse

22   Esther, and Dr. Marvasti in their individual capacities by alleging that they "provid[ed] inadequate

23   medical and mental health care" to Plaintiff and wrongfully discharged him from UMC and inflicted

24   extreme emotional distress upon him.

25          **D.      Conclusion.**

26          Plaintiff states valid § 1983 claims against UMC, the Security Guards, Nurse Esther, and Dr.

27   Marvasti in their individual capacity for relief based on alleged violations of Thompson's rights under

28   the First and Fourteenth Amendments, as well as Nevada state law governing professional negligence,

7

1    IIED, and NIED.  Because Plaintiff has not alleged any wrongdoing on the part of the Doe Defendants,

2    they will be dismissed for failure to state a claim on which relief can be granted.

3    **II.    UMC's Motion (Dkt. #33).**

4           The Motion (Dkt. #33) seeks clarification whether any responsive pleading to any of Plaintiff's

5    complaints is due.  Alternatively, UMC seeks an extension of time to respond to Plaintiff's First

6    Amended Complaint until February 7, 2009.  UMC states that it is unclear whether it is required to

7    respond to the First Amended Complaint because Plaintiff filed a Second Amended Complaint which

8    has not been screened by the court or served upon Defendants.  The court has now screened the Second

9    Amended Complaint, and it will be filed, thereby superceding Plaintiff's First Amended Complaint and

10   obviating the need to file a responsive pleading to the First Amended Complaint.

11          UMC's Motion for Clarification (Dkt. #33) will be granted.

12          Based on the foregoing,

13          **IT IS ORDERED** that:

14          1.      The Clerk of the Court shall file the Second Amended Complaint.

15          2.      Defendants UMC, Dr. Marvasti, and Nurse Esther shall have until **February 10, 2009** in

16                  which to file an answer or other responsive pleading.

17          3.      Plaintiff may, at a later date, amend the complaint to reflect the true identity of the

18                  Security Guards once he has ascertained such information from hospital officials or

19                  through the discovery process.

20          4.      From this point forward, Plaintiff shall serve upon Defendants, or, if appearance has

21                  been entered by counsel, upon the attorney(s), a copy of every pleading motion or other

22                  document submitted for consideration by the court.  Plaintiff shall include with the

23                  original papers submitted for filing a certificate stating the date that a true and correct

24                  copy of the document was mailed to the defendants or counsel for the defendants.  The

25                  court may disregard any paper received by a District Judge or Magistrate Judge which

26                  has not been filed with the Clerk, and any paper received by a District Judge, Magistrate

27                  Judge, or the Clerk which fails to include a certificate of service.

28   ///

8

5.     The Motion for Clarification (Dkt. #33) is **GRANTED.** UMC is not required to file a responsive pleading to Plaintiff's First Amended Complaint, but it shall respond to the Second Amended Complaint pursuant to the Federal Rules of Civil Procedure.

**IT IS RECOMMENDED** that:

1.     The Second Amended Complaint's causes of action against the Doe Defendants be **DISMISSED** for failure to state a claim upon which relief can be granted.

2.     All claims against Defendants Dr. Marvasti, Nurse Esther, and the Security Guards in their official capacities be **DISMISSED** for failure to state a claim upon which relief can be granted.

Dated this 30th day of January, 2009.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within ten days after being served with these findings and recommendations, any party may file written objections with the court. Pursuant to Local Rule of Practice (LR) IB 3-2(a), any party wishing to object to the findings and recommendations of a magistrate judge shall file and serve *specific written objections* together with points and authorities in support of those objections, within ten (10) days of the date of service of the findings and recommendations. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's Order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). The points and authorities filed in support of the specific written objections are subject to the page limitations found in LR 7-4.