1
2
3
4
5

**UNITED STATES DISTRICT COURT**

6

**DISTRICT OF NEVADA**

7

THEODORE J. THOMPSON,                    )

8                                         )        Case No. 2:07-cv-01378-RLH-PAL
                            Plaintiff,    )

9                                         )        **ORDER AND REPORT OF FINDINGS**
vs.                                       )        **AND RECOMMENDATION**

10                                        )
UNIVERSITY MEDICAL CENTER, et al.,        )        (Emer Mtn to Reschedule - Dkt. #117)

11                                        )
                            Defendants.   )
                                          )
12   _____ )

13          This matter is before the court on Plaintiff's Emergency Motion for the Rescheduling of

14   Plaintiff's Deposition (Dkt. #117) filed October 13, 2010.  The court has considered the Motion,

15   Defendants Joint Response and Counter-Motion to Dismiss (Dkt. #119), and Plaintiff's untimely Reply

16   (Dkt. #120).

17                                    **BACKGROUND**

18          This case has a long procedural history.  Plaintiff filed an Application to Proceed *In Forma*

19   *Pauperis* and submitted a Complaint on October 12, 2007.  On December 4, 2007, the court screened

20   Plaintiff's Complaint pursuant to 28 U.S.C. § 1915 and directed the Complaint be filed and summons

21   be issued and served.  Subsequently, Plaintiff sought leave to amend his Complaint, and on January 30,

22   2009, the court screened Plaintiff's Second Amended Complaint and directed service of summons.

23   Since that time, discovery has been on-going.  The parties have had numerous discovery disputes, most

24   recently, concerning Plaintiff's failure to appear for his deposition, which was originally noticed for

25   September 1, 2010.

26          The court set a hearing on Defendant UMC's Motions to Compel (Dkt. ##99, 103), Motion to

27   Dismiss (Dkt. #104), and Motion for Sanctions Re: Discovery (Dkt. #105) on October 5, 2010.  The

28   court had a full calendar that morning, but waited ten minutes after the appointed hearing time for

Plaintiff to appear before directing the clerk to call the case.  The court reviewed the moving and

responsive papers on the motions set for hearing without entertaining oral argument from counsel for

Defendants as the Plaintiff did not appear.  The court denied Defendants' request for dismissal as a

discovery sanction, and granted in part and denied in part Defendants' motions to compel.  Plaintiff

eventually appeared at 10:00 a.m. for the 9:30 a.m. hearing after defense counsel had already left the

courthouse.  After hearing other matters on the calendar, the court advised Plaintiff that he had been

ordered to appear for a deposition and asked the Plaintiff whether there were any days between October

5, 2010, and October 20, 2010, when he was unavailable for a deposition.  Mr. Thompson responded

that he did not have any scheduling conflicts during this time frame and would appear on any date the

court ordered. Plaintiff claimed that he was having trouble receiving mail in a timely manner, and the

undersigned's courtroom deputy provided his phone number to Plaintiff as a contact in case Plaintiff

did not receive the written order following the hearing.  A written Order (Dkt. #116) was entered

October 7, 2010.

The written Order (Dkt. #116) granted in part and denied in part the Defendants' motions.  The

motion to compel was granted to the extent that Plaintiff was ordered to appear at the Lloyd D. George

Federal Courthouse for a deposition on October 13, 2010, at 9:30 a.m.  He was warned that "[f]ailure to

appear at the deposition to answer questions under oath will result in a recommendation to the district

judge that Plaintiff's complaint be dismissed for failure to prosecute, failure to appear for deposition,

and failure to comply with this court's order."  Order, Dkt. #116 at 2:28-3:1-3.  The order denied

Defendants' motion to dismiss, but indicated Plaintiff would be precluded from relying upon any

witnesses or documents in motion practice or at trial that he did not identify in response to Defendants'

written discovery requests and/or at his deposition under oath.  The order also precluded the Plaintiff

from calling any expert witness for whom an expert witness disclosure is required pursuant to Rule

26(a)(2)(B) because the deadline for designating experts had run, and Plaintiff had not served an expert

disclosure.

Plaintiff did not appear for his deposition at 9:30 a.m. on October 13, 2010, as ordered.  Instead,

he filed this Emergency Motion to Reschedule (Dkt. #117) seeking an order rescheduling his deposition

from October 13, 2010, to another date.  He asserts that on October 12, 2010, he had dinner at a local

2

Denny's restaurant, and when he returned to his car, the two front tires had been slashed.  He replaced one tire with his car's spare tire.  Plaintiff attempted to have the tires replaced at a twenty-four-hour tire shop, but the shop did not have tires to replace the damaged ones.  He states he slept in his car on Main Street and Hoover Avenue, and at around 8:10 a.m. on October 13, 2010, took his car to the Main Street Auto Body Shop, where he had the second tire plugged.  Plaintiff states that he arrived at the courthouse at 10:50 a.m. for his 9:30 a.m. scheduled deposition.  Plaintiff discovered that defense counsel had already left the courthouse, and Plaintiff states he called defense counsel three times, left him voicemail messages, and also stopped by counsel's office in an attempt to meet for the deposition later in the afternoon.  He also offered to pay for the court reporter's waiting time.  Plaintiff states that at approximately 11:40 a.m., he drove to Mr. Pitegoff's office, but was met with a "negative attitude" from the receptionist and told Mr. Pitegoff was not in.  He also states that "Mr. Pitegoff refuse[d] to actknowledge [sic] Plaintiff's attempts to confer about the deposition." Motion at ¶ 9.

Defendants oppose the motion pointing out that Plaintiff has repeatedly accused defense counsel of harassing him.  In prior pleadings, the Plaintiff has claimed that he is being "constantly and forcefully harassed, stalked, and threatened on a daily basis."  Dkt. #109 at ¶ 5.  In that same document, Plaintiff claimed that for months he has been followed everywhere he goes, back and forth from California to Nevada, and is "constantly tried to be forced into an accident or purposely provoked." *Id.* at ¶ 6.  Mr. Thompson has made other delusional accusations that defense counsel has placed a tracking device on his car, had individuals confront him to provoke violence, and provoked encounters with underage minor children. Dkt. #110 at ¶ 2.  Finally, the Plaintiff's emergency motion to reschedule his deposition appears to accuse defense counsel of being responsible for sabotaging the Plaintiff's car the night before the October 13, 2010 deposition.

Mr. Pitegoff, counsel for Defendant UMC, denies that he was avoiding Plaintiff's calls on October 13, 2010.  Mr. Pitegoff represents that, after Mr. Thompson failed to appear for his deposition, he checked his office messages, delivered documents to another law office, ran an errand and did not return to his office the entire day.  At approximately 11:25 a.m., he checked his messages and learned that the Plaintiff had called and left a message stating that his vehicle was sabotaged and he wanted to do the deposition later that day.  Mr. Thompson's message claimed he would call back constantly so

that Mr. Pitegoff could speak with him about continuing the deposition later that day. In his message, the Plaintiff claimed that Mr. Pitegoff could not speak with the Plaintiff by telephone because Plaintiff's telephone was stolen and he had no number to return a call. Plaintiff stopped by Mr. Pitegoff's office and had the receptionist leave a voice mail message for Mr. Pitegoff with a phone number. Counsel for UMC called the number Mr. Thompson left and received a recording indicating that he could not be reached at that number. The message provided the caller a new number which proved not to be a valid number. Shortly thereafter, the Plaintiff appeared at Mr. Pitegoff's office a second time asking to see him. Mr. Pitegoff was not in the office. However, Mr. Pitegoff's receptionist contacted him and Plaintiff and Mr. Pitegoff spoke on the telephone. Plaintiff advised Mr. Pitegoff that he had filed the instant motion.

Defense counsel asks that the court deny Plaintiff's emergency motion, and has filed a countermotion to dismiss, asserting Plaintiff has not shown good cause for his failure to timely appear for his second deposition. Defendants point out that at no point before or during the deposition did Plaintiff call counsel to advise them that his car had been damaged and he was unable to attend. Defendants also point out that the location Plaintiff claims to have been at was close to the courthouse, and Plaintiff could have taken a bus, a taxi, or walked to the deposition. Defendants assert that based on Plaintiff's previous conduct there is no guarantee that he will appear at an additional court-ordered deposition. The deposition was scheduled before the October 20, 2010 discovery cutoff. Defendants ask that the court recommend case dispositive sanctions because of Plaintiff's failure to cooperate in conducting discovery, and because of the Plaintiff's failures to obey multiple court orders.

Plaintiff replies that his case should not be dismissed. He asserts, among other things, that he has only missed one scheduled deposition in this case, and that Defendants will not be prejudiced if the court permits his deposition to be rescheduled. Plaintiff also asserts defense counsel did not attempt to meet and confer with him on October 13, 2010, and reiterates that his deposition should be rescheduled.

### DISCUSSION

The court finds that Plaintiff has not established good cause for rescheduling his deposition a third time. Plaintiff has not appeared for two scheduled depositions. His first deposition was noticed and scheduled for September 1, 2010. Plaintiff failed to appear, and Defendant UMC filed a Motion to

Compel (Dkt. #103).  The court set a hearing on the Motion to Compel.  Plaintiff was thirty minutes late for the hearing.  However, the court orally advised the Plaintiff of the court's ruling and that a written order would be entered and served on him.  The court asked the Plaintiff if there were any dates between October 5, 2010, and the October 20, 2010 discovery cutoff that he was unavailable for a deposition.  The Plaintiff indicated to the court that he was available on any day at any time during these two dates to have his deposition taken.  When the Plaintiff indicated he was having trouble getting mail delivered on a timely basis, the court had the courtroom deputy provide the Plaintiff with his direct line advising Plaintiff that he should call the courtroom deputy if he did not receive a copy of the court's written order.  The written order was entered October 7, 2010, and the clerk of the court served the order by mail on the Plaintiff at the address he has provided on papers and pleadings on file.

Despite being orally advised of the court's order, agreeing to appear on any date between October 5, 2010, and October 20, 2010, and receiving a copy of the court's written order, Plaintiff did not appear for his deposition on October 13, 2010 at 9:30 a.m. as ordered.  Rather, Plaintiff claims he appeared at 10:50 a.m., and hour and twenty minutes after the date and time scheduled for his deposition.  Based on representations made in his emergency motion, the Plaintiff was awake at 8:10 a.m. on the morning of his deposition.  The court notes that Main and Hoover, where the Plaintiff claims he took his car to have the tires fixed, is about a mile away from the federal courthouse where his deposition was scheduled.  Although the Plaintiff made multiple attempts to call counsel for Defendants long after his deposition was scheduled, he made no attempt to contact the clerk of the court, chambers, or opposing counsel to indicate he was having any problem or would be delayed.  He could have and should have timely appeared for his deposition.  He could have walked, taken a bus, or a cab.  Instead, he elected to have the tire on his car fixed before appearing at his court-ordered deposition.

Plaintiff has repeatedly failed to meet his discovery obligations in this case, and has twice failed to appear for his deposition.  Defendants have moved to compel Plaintiff to participate in discovery in this case and have twice sought dismissal sanctions for Plaintiff's failure to meet his discovery obligations.  On March 8, 2010, Defendant Marvasti moved the court to compel Plaintiff to respond to written discovery.  *See, e.g.,* Motion, Dkt. #89.  Plaintiff did not oppose the Motion, and the court

1   compelled Plaintiff to respond, warning him that failure to comply could result in a recommendation to

2   the District Judge of case-dispositive sanctions. *See* Order, Dkt. #90.  On May 26, 2010, Defendant

3   Marvasti renewed her Motion to Compel (Dkt. #91), asserting Plaintiff had still not fully responded to

4   written discovery propounded on him.  Again, Plaintiff did not oppose the motion.  The court entered

5   an Order (Dkt. #93) on July 23, 2010, compelling Plaintiff to fully respond to certain discovery requests

6   but declined to recommend dismissal finding counsel for Marvasti had not complied with his meet-and-

7   confer obligations under LR 26-7(b) and that the court's prior order compelling Plaintiff to respond to

8   Dr. Marvasti's discovery requests did not require that Plaintiff respond without objection.  The court

9   reviewed each of the disputed discovery responses and ordered that Plaintiff respond to some,

10  overruling his objections, but that he was not required to respond to others, sustaining his objections.

11  The order again warned Plaintiff that failure to comply with the court's order and his discovery

12  obligations could result in case-dispositive sanctions.  *See* Order, Dkt. #93.

13       Plaintiff has filed numerous non-meritorious motions resulting in an Order (Dkt. #81) entered

14  by the District Judge.  The order found that the Plaintiff's motions were spurious and improper, and

15  indicated that any future motions to strike by the Plaintiff would be stricken.  The Order also advised

16  the Plaintiff that *"Any violation of this order will subject Plaintiff to a dismissal of this case pursuant to*

17  *its authority under Fed. R. Civ. P. 11, specifically 11(b)(1), to put an end to harassment or a needless*

18  *increase in the cost of litigation."* Order, Dkt. #81 at 1:24-25 - 2:1.  Finally, the District Judge's order

19  noted that the Plaintiff's motion to strike addressed motions to dismiss which had already been decided

20  before the Plaintiff filed the motions to strike.  Notwithstanding the District Judge's order, Plaintiff

21  filed a motion to strike Defendants' Counter-Motion to Dismiss on November 3, 2010.  *See* Dkt. #125.

22       The court recognizes that dismissal of Plaintiff's claims is a severe sanction.  The Ninth Circuit

23  has constructed a five-part test to determine whether a case-dispositive sanction under Rule 37(b)(2) is

24  just.  The court must consider: 1) the public's interest in expeditious resolution of litigation; 2) the

25  court's need to manage its docket; 3) the risk of prejudice to the party seeking sanctions; 4) the public

26  policy favoring disposition of cases on their merits; and 5) the availability of less-drastic sanctions.

27  *Connecticut General Life Insurance Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir.

28  2007).  On appellate review, the Ninth Circuit examines the fifth factor to determine whether the trial

1    court considered lesser sanctions, tried them, and warned the recalcitrant party about the possibility of

2    case-dispositive sanctions.  *Id.*

3         Applying these factors, the court finds that the public's interest in expeditious resolution of this

4    litigation weighs in favor of case-dispositive sanctions.  This case has been pending since 2007.

5    Additionally, the court's need to manage its docket weighs in favor of case-dispositive sanctions.  The

6    court has heard and decided multiple discovery motions relating to Plaintiff's failure to respond to

7    discovery.  Although the Plaintiff did not respond to two of these motions, the court denied Defendants'

8    request for case-dispositive sanctions.  Instead, the court reviewed the motions on their merits and

9    ordered Plaintiff to respond further to some, but not all of Defendants' requests.  The court has also

10   been forced to rule on multiple non-meritorious motions to strike filed by Plaintiff, that have clogged

11   the docket and delayed resolution of this case.

12        The risk of prejudice to the party seeking sanctions also weighs in favor of case-dispositive

13   sanctions.  The Defendants have been prejudiced by having to respond to multiple non-meritorious

14   motions, compel responses to routine discovery, and obtain orders requiring compliance with routine

15   discovery, and to compel the Plaintiff's appearance at deposition.  The Plaintiff's failure to comply with

16   routine discovery obligations, and the orders of this court, has resulted in substantial attorneys fees and

17   costs to the Defendants.  The public policy in favor of disposition of cases on their merits weighs

18   against a dismissal sanction.  Finally, the court finds that the fifth factor weighs in favor of dismissal.

19   The court has entered orders compelling the Plaintiff to appear at deposition and to supplement his

20   discovery responses, and has precluded him from presenting evidence not disclosed.  The court has also

21   repeatedly warned the Plaintiff about the possibility of case-dispositive sanctions for failure to comply

22   with his discovery obligations, and the court's orders.  The court has considered and imposed less

23   drastic sanctions and warned Plaintiff that case dispositive sanctions would be imposed for future

24   violations.

25        The Plaintiff failed to appear for two depositions, and appeared a half hour late to court on the

26   Motion to Compel his attendance at deposition.  Although there were many other matters on the court's

27   calendar, the court personally addressed the Plaintiff the morning of the hearing to tell him what had

28   happened and inquire whether there were any dates he was unavailable for a rescheduled deposition

between October 5, 2010, and October 20, 2010–the last day of the discovery cutoff.  Plaintiff assured the court that he would make himself available on any date the court selected.  When the Plaintiff indicated that he was having trouble getting his mail on a timely basis, the court's courtroom administrator provided his direct line to enable Plaintiff to contact him if he did not timely receive a copy of the court's written order.

Despite all of these efforts, and Plaintiff's assurances that he would appear, he appeared one hour and twenty minutes late for his second deposition after counsel and the court reporter had already left the courthouse.  His explanation for his failure to appear is simply not credible.  He was only about a mile away from the courthouse at 8:10 a.m., and elected to have the tire on his car repaired instead of appearing for his deposition.  Although he made multiple phone calls to defense counsel hours after his scheduled deposition, he made no effort to contact defense counsel, chambers or the undersigned's courtroom administrator at the direct line he had been given.

In short, Plaintiff's willful failure to comply with the court's Orders and cooperate with discovery are abusive litigation practices that have interfered with the court's ability to hear this case, delayed litigation, disrupted the court's timely management of its docket, wasted judicial resources, and threatened the integrity of the court's orders and the orderly administration of justice.  Sanctions less drastic than dismissal are unavailable because Plaintiff has been repeatedly warned of the case-dispositive consequences of his failures to comply with court Orders, and has repeatedly failed to comply.

For all of these reasons,

**IT IS ORDERED** that Plaintiff's Emergency Motion to Reschedule Deposition (Dkt. #117) is **DENIED**.

///

///

///

///

///

///

8

1      **IT IS RECOMMENDED** that Plaintiff's Second Amended Complaint be **DISMISSED WITH**

2  **PREJUDICE** for failure to prosecute, failure to appear for two duly-noticed depositions, and failure to

3  comply with orders of the court.

4      Dated this 10th day of January, 2011.

5

6                                              _____

7                                              PEGGY A. LEEN
                                              UNITED STATES MAGISTRATE JUDGE

8

9                                    **NOTICE**

10     These findings and recommendations are submitted to the United States District Judge assigned to

11  the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served

12  with these findings and recommendations, any party may file written objections with the court.  Pursuant

13  to Local Rule of Practice (LR) IB 3-2(a), any party wishing to object to the findings and

14  recommendations of a magistrate judge shall file and serve *specific written objections* together with

15  points and authorities in support of those objections, within fourteen days of the date of service of the

16  findings and recommendations.  The document should be captioned "Objections to Magistrate Judge's

17  Findings and Recommendations."  The parties are advised that failure to file objections within the

18  specified time may waive the right to appeal the District Court's Order.  *Martinez v. Ylst*, 951 F.2d 1153

19  (9th Cir. 1991).  The points and authorities filed in support of the specific written objections are subject

20  to the page limitations found in LR 7-4.

21

22

23

24

25

26

27

28

9